UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

MAJOR LEAGUE BASEBALL PLAYERS
ASSOCIATION,

                    Plaintiff,

                    -v-

WILLIAM ARROYO, NOAH ASSAD, and JONATHAN
MIRANDA,

                    Defendants.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/17/2024

24-cv-3029 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

      Plaintiff the Major League Baseball Players Association ("Plaintiff" or "MLBPA") instituted this action to confirm an arbitration award against Defendants William Arroyo, Noah Assad, and Jonathan Miranda (collectively, "Defendants") under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 185 et seq. Dkt. No. 1; see also Dkt. No. 13 (Plaintiff's motion to confirm the arbitral award). The MLBPA is a labor organization representing professional baseball players, Dkt. No. 1 ¶ 7, Arroyo is a certified General Agent with the agency Rimas Sports, id. ¶ 5, and Assad and Miranda are senior executives of Rimas Sports, id. ¶ 6. The complaint avers that the MLBPA issued a Notice of Discipline to Arroyo, Assad and Miranda on April 10, 2024 that detailed serious violations of the MLBPA's regulations—including those prohibiting inducements and unlawful recruiters and requiring cooperation with MLBPA investigations—revoked Arroyo's certification, and denied certification to Assad and Miranda (the "Notice of Discipline"). Id. ¶¶ 13–14. The complaint also alleges that on April 19, 2024, Arbitrator Michael Gottesman

denied Defendants' application for a temporary restraining order staying the discipline imposed on them pending an appeal (the "Decision"). *Id.* ¶¶ 15–18.

Plaintiff moves by letter to file the Notice of Discipline, the Decision, and "certain parts of the parties' submissions" under seal. Dkt. No. 15 at 2. Specifically, Plaintiff seeks an order that: the Notice of Discipline and Decision be sealed; all future filings redact any quotation of the Notice of Discipline, Decision, or any specific findings or holdings of either document; and all future filings consisting of materials submitted in the arbitration be filed under seal. *Id.* at 3. Defendants seeks a stay of this action and filed a letter motion that "mirrors and incorporates" the Plaintiff's letter and seeks similar relief, including sealing of the Notice of Appeal. Dkt. No. 23 at 2; *see* Dkt. Nos. 24-1, 25-1.

For the following reasons, the motions to file the Notice of Discipline, Decision, the Notice of Appeal, and parts of the parties' submissions under seal are DENIED, without prejudice to renewal with more narrowly tailored and properly supported requests by June 28, 2024.

## DISCUSSION

Under both the First Amendment and the common law, "there is a presumption of immediate public access to judicial documents." *Lohnn v. Int'l Bus. Machs. Corp.*, 2022 WL 36420, at *6 (S.D.N.Y. Jan. 4, 2022), *appeal withdrawn*, 2022 WL 18232089 (2d Cir. July 25, 2022). That presumption ensures the legitimacy and accountability of the courts, as "professional and public monitoring is an essential feature of democratic control," without which "the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo* (*Amodeo II*), 71 F.3d 1044, 1048 (2d Cir.1995)); *see also Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982) ("An adjudication is a formal act of government, the

basis of which should, absent exceptional circumstances, be subject to public scrutiny."). But monitoring is simply "not possible without access to testimony and documents that are used in the performance of Article III functions." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1048).

In determining whether to permit the sealing of records filed in federal court, the Court engages in a three-step analysis. "First, the court determines whether the record at issue is a 'judicial document'—a document to which the presumption of public access attaches." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). Second, "if the record sought is determined to be a judicial document, the court proceeds to determine the weight of the presumption of access to that document." *Id.* (quotation omitted). Third, "the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*; *see Stafford v. Int'l Bus. Machs. Corp.*, 78 F.4th 62, 70 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 1011 (2024).

The Notice of Discipline, the Decision, the Notice of Appeal, and the papers submitted in connection with the motion to confirm the Decision are judicial documents. For a document to be considered a judicial document, it "must be relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo* (*Amodeo I*), 44 F.3d 141, 145 (2d Cir. 1995); *see Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). As Judge Sullivan, then sitting in the district court, put it not long ago, "it is well settled in this District that 'the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition.'" *Clearwater Ins. Co. v. Granite State Ins. Co.*, 2015 WL 500184, at *3 (S.D.N.Y. Feb. 5, 2015) (Sullivan, J.) (quoting *Aioi Nissay*

3

*Dowa Ins. Co. v. ProSight Specialty Mgmt. Co.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012) (collecting cases)); *see also Stafford*, 78 F.4th at 70 ("[T]he arbitration award attached to [the] petition to confirm is a judicial document because it is relevant to the court's decision to confirm that award." (quotation omitted)).

Second, the weight of the presumption of public access "is of the highest." *Lugosch*, 435 F.3d at 123. The "weight of the presumption [of access] is a function of (1) the role of the material at issue in the exercise of Article III judicial power and (2) the resultant value of such information to those monitoring the federal courts." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quotations omitted). The highest presumption applies to "matters that directly affect an adjudication." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1049). A strong presumption of public access attaches to papers submitted in connection with a motion to confirm an arbitration award. Such papers "directly affect an adjudication." *Amodeo II*, 71 F.3d at 1049. The contents of an award, its reasoning, and the facts recited in it are central to the judicial function. An arbitrator's award must "be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). Moreover, the motion calls upon public officers, paid for by the taxpayer, to discharge a function entrusted to them by Congress. *See Bernstein*, 814 F.3d at 141 ("[A] claim has been leveled and . . . state power has been invoked—and public resources spent—in an effort to resolve the dispute."). Under the law in this Circuit, a motion to confirm an arbitration is treated as a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109. The motion, much like a motion for summary judgment, results in a final adjudication of the rights as between the parties. *See id.* at 110 ("[C]onfirmation of an

4

arbitration award . . . makes what is already a final arbitration award a judgment of the court." (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984))); *Lohnn*, 2022 WL 36420, at *9 ("Plaintiff's motion and the accompanying papers ask the Court for the ultimate relief any court can grant—a judgment in her favor.  The entry of judgment is integral to the judicial function.").  If the moving party satisfies the standards set forth by Congress under the Federal Arbitration Act, the court enters a judgment, concluding the matter.  *See* 9 U.S.C. § 9.  Public access to the materials supporting the motion to confirm the arbitration award thus implicates all of the interests that the Second Circuit has held justify the presumption of public access: "the need for federal courts," in the discharge of their substantive duties and "particularly because they are independent . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Lugosch*, 435 F.3d at 119 (quoting *Amodeo II*, 71 F.3d at 1048); *see also TIG Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2019 WL 6310208, at *5 (S.D.N.Y. Nov. 25, 2019) ("[B]y availing themselves of the judicial process, the parties must also contend with the values of transparency and public access which undergird its legitimacy.").  Indeed, the Second Circuit has long condemned the final adjudication of substantive rights "on the basis of secret documents." *Joy*, 692 F.2d at 893; *see also United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) ("The political branches of government claim legitimacy by election, judges by reason.  Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." (quotation omitted)).

      Finally, on the record here, the parties have not established the existence of "countervailing factors" that outweigh the strong presumption of public access. *Lugosch*, 435 F.3d at 120.  Countervailing factors include: "the danger of impairing law enforcement or

judicial efficiency," *SEC v. TheStreet.Com*, 273 F.3d 222, 232 (2d Cir. 2001); the need to safeguard "grand jury transcripts" and "medical records," *Dunham v. City of New York*, 2021 WL 918373, at *1 n.1 (S.D.N.Y. Mar. 10, 2021); the protection of attorney-client privilege, *Lugosch*, 435 F.3d at 125; and "the privacy interests of those resisting disclosure, such as trade secrets," *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 154 (S.D.N.Y. 2014).

The parties' requests rest exclusively on the confidentiality provisions of the MLBPA regulations. Section 7(B)(23) of the MLBPA regulations provides, in pertinent part:'

> **<u>Use of Proceedings and Decisions</u>** – Arbitration proceedings pursuant to this Section 7(B) are confidential, except to the extent that disclosure of any aspect of the proceedings (*e.g.*, the notice, appeal, briefs or other filings, hearing transcript, exhibits, etc.) is necessary, in the judgment of the MLBPA, for the effective administration of these Regulations or the effective representative of the Players.

Dkt. No. 15 at 1–2; Dkt. No. 17-2 at 52–53. The preamble to the arbitration provisions of the MLBPA Regulations states, in pertinent part:

> This provision is intended and designed to ensure that all disputes – which involve essentially internal matters concerning the relationships and dealings among individual Players, Player Agents, Expert Agent Advisors, Applicants, Agencies and affiliated persons or entities, and the MLBPA in its capacity as the exclusive bargaining representative for the Players – are handled expeditiously and privately by the impartial tribunals established in these Regulations, instead of through more costly, time-consuming and public formal court proceedings.

Dkt. No. 17-2 at 43. Plaintiff argues that the "MLBPA . . . is entitled to resolve, in private, disputes internal to the MLBPA, as it discharges its duty under federal labor law to represent MLB and MiLB players" and that its "ability to discharge its duties as the representative of MLB and MiLB players will be compromised if its internal deliberations and processes—including arbitration awards produced through its internal processes—become public." Dkt. No. 15 at 2; *see also* Dkt. No. 23 at 2.[1]

---

[1] The parties cite *Stafford* for the proposition that "confidentiality is a paradigmatic aspect of arbitration" that justifies sealing here, Dkt. No. 15 at 1 (citing *Stafford*, 78 F.4th at 71 (internal

6

"Courts in this District have consistently held that Parties' interest in a confidentiality agreement enacted between them is not sufficient on its own to overcome the interest of public disclosure and transparency." *Gen. Re Life Corp. v. Am. Gen. Life Ins. Co.*, 2024 WL 1329381, at *5 (S.D.N.Y. Mar. 28, 2024); *see Lohnn*, 2022 WL 36420, at *13; *Dentons US LLP v. Zhang*, 2021 WL 2187289, at *1 (S.D.N.Y. May 28, 2021) (collecting cases); *see also Mercantile Glob. Holdings, Inc. v. Hamilton M&A Fund, SP*, 2024 WL 1974276 (S.D.N.Y. May 3, 2024) (permitting documents in support of a motion to vacate an arbitration award to be filed under seal when, in addition to the interest in arbitral confidentiality, petitioner argued that the documents contained confidential business and proprietary information the disclosure of which would unfairly aid its competitors, without addressing whether the award could be filed under seal). It follows that the mere invocation of the rules or regulations of a private organization cannot alone justify the continued sealing of documents to which the public presumptively has a right of access. *Cf. Est. of Jackson ex rel. Jackson v. Cnty. of Suffolk*, 2019 WL 3253063, at *8 (E.D.N.Y. July 19, 2019) (denying motion to seal a report kept confidential "pursuant to internal policy"). That is all the more the case where, as here, the confidentiality obligation is qualified and the MLBPA reserves for itself the right, at any time, to make public "any aspect of the proceedings." Dkt. No. 17-2 at 52; *see Lugosch*, 435 F.3d at 126.

---

citations and quotations omitted)); Dkt. No. 23 at 3. But *Stafford* does not stand for the broad proposition that any document generated or submitted in the course of an arbitration is entitled to continued confidentiality in federal court by virtue of that fact alone. In *Stafford*, the petition to confirm an arbitral award had become moot and counsel's express purpose was not to obtain satisfaction of the award but rather to "evade the confidentiality provision to which [the plaintiff] agreed in her arbitration agreement" and to use the documents in other proceedings. 78 F.4th at 71. Here, Plaintiff—which reserved to itself the right to disclose "any aspect" of the arbitration proceedings if such disclosure was necessary for the effective administration of its Regulations—has knowingly placed the arbitration materials at issue by injecting them into a public proceeding.

7

The parties' applications focus on the Decision and the Notice of Discipline. The Decision is a three-page, nine-paragraph document. Dkt. No. 16-1. Seven of the paragraphs are limited to a discussion of the standards for a stay, the arguments regarding a stay, and the arbitrator's conclusions without any discussion of the underlying facts of the dispute. *Id.* at 2–4. One paragraph contains several sentences discussing the evidence recited by the MLBPA in support of the Notice of Discipline, but that paragraph discloses little more than what is already stated in the complaint and Plaintiff's memorandum of law in support of the motion to confirm: that Arroyo was part of a scheme to lure players not currently represented by him to shift their representation by offering them things of value. *Id.* at 2. The other paragraph simply references the notion of building a baseball agency by luring players with forbidden gifts. *Id.*

While the Notice of Discipline is far lengthier and contains the names of certain baseball players and other persons not parties to this litigation, there are many paragraphs that simply describe the regulatory background, charges, or discipline imposed. Dkt. No. 16-8. And even as to the factual findings, it is difficult to discern what truly implicates the privacy interests of third parties and what does not.[2] Plaintiff's memorandum of law in support of the motion to confirm the Decision itself discloses that "[t]he Notice of Discipline details extensive and serious violations of the MLBPA Regulations, including those prohibiting inducements and unlawful recruiters and requiring cooperation with MLBPA investigations," that "Arroyo's, Assad's and Miranda's conduct reflects some of the most egregious violations ever committed under the MLBPA Regulations," and the discipline imposed on Arroyo, Assad, and Miranda. Dkt. No. 14

---

[2] The same is true of the ninety-five-page Notice of Appeal. Dkt. No. 24-2. Most of the Notice of Appeal simply quotes the Notice of Discipline and provides Defendants' paragraph-by-paragraph responses. Thus, just like the Notice of Discipline, the Notice of Appeal discusses several non-sensitive matters, such as the regulatory background or undisputed facts about the Defendants. *See, e.g., id.* at 5–11.

at 5.  It also divulges that "[a]s explained in the Notice of Discipline, . . . the MLBPA determined that it is necessary to immediately implement the disciplinary measures described in order to protect the interests of MLB and MiLB players," *id.*, and it argues that the Decision "presents a cogent, thoughtful, and well-reasoned analysis," *id.* at 9.  It is difficult to see what would be confidential in the Decision that Plaintiff has not already disclosed through its Memorandum of Law and Complaint or the other public documents filed with its papers—save perhaps the quotation marks around the language that describes the Decision.  It is also difficult to imagine how the public could consider whether the Decision is indeed cogent, thoughtful, or well-reasoned—or whether the Court is justified in agreeing with that characterization—without any disclosure of the reasoning contained within the Decision.  *See Aref*, 533 F.3d at 83.

       The parties' applications are faulty for another reason.  Under Second Circuit precedent and this Court's individual practices, a court may maintain materials in court filings under seal only after "review[ing] the documents individually" and making "'specific, on-the-record findings that sealing is necessary to preserve higher values.'"  *Brown*, 929 F.3d at 48 (quoting *Lugosch*, 435 F.3d at 124); *see* Individual Practices in Civil Cases § 2.H, Attachment B.  Consequently, the Court cannot grant blanket approval to seal "[a]ll future filings consisting of materials submitted in the arbitration" going forward.  Dkt. No. 15 at 3; *see* Dkt. No. 23 at 3; *Jadwalean Int'l Co. for Operations & Mgmt v. United Tech Corp.*, 2009 WL 1064495, at *1 (D. Conn. Apr. 17, 2009).

       The parties therefore may renew their motions with limited, targeted, and well-supported requests to seal on or before June 28, 2024.  If the parties do not file a renewed motion to seal by that date, the Court will make public the Notice of Discipline, Decision, and Notice of Appeal.

*See Lohnn*, 2022 WL 36420, at *7 ("The First Amendment does not easily tolerate the continued concealment of information to which the public has a right of access.").

## CONCLUSION

The motions to seal are DENIED without prejudice to the submission of renewed motions on or before June 28, 2024.

The Clerk of Court is respectfully directed to close Dkt. Nos. 15 and 23.

SO ORDERED.

Dated: June 17, 2024
      New York, New York

                                                 LEWIS J. LIMAN
                                       United States District Judge